IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 8:19-CR-174 |
| vs. | |
| NEREUS S. SUTKO, | TENTATIVE FINDINGS |
| Defendant. | |

The Court has received the revised presentence investigation report in this case. The defendant objects to the presentence report and moves for a downward departure. Filing 59.

IT IS ORDERED:

1. The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005) and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

    (a) give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

    (b) resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

(c) impose upon the United States the burden of proof on all Guidelines enhancements;

(d) impose upon the defendant the burden of proof on all Guidelines mitigators;

(e) depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

(f) in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2. The defendant objects to the presentence report's assessment of several offense level enhancements. Filing 59, *see* filing 60. Application of sentencing enhancements must be supported by a preponderance of the evidence, and the government has the burden to prove the factual basis for an enhancement. *United States v. Mitchell*, 825 F.3d 422, 425 (8th Cir. 2016). If the defendant objects to the factual basis for a sentencing enhancement, and the government fails to present evidence to prove that factual basis by a preponderance of the evidence, it is error to apply the enhancement. *Id.* But here, as the Court reads the defendant's objections, he is for the most part not objecting to the factual basis for the enhancements—that is, with a couple of exceptions that will be noted below, he is not claiming that the facts as represented in the presentence report are inaccurate. Rather, he is primarily arguing that the facts, as

represented in the presentence report, do not support the enhancements that have been assessed.

**(a)(i)** First, the defendant objects to the two-level enhancement to the offense conduct for an offense "committed through mass-marketing." *See* U.S.S.G. § 2B1.1(b)(2)(A)(ii). The government asserts that the defendant was able to file thousands of fraudulent claims by hosting pizza parties, distributing brochures, and offering incentives and kickbacks to recruiters in order to obtain a Medicare or Medicaid beneficiary's personal information. The defendant would then—with or without the beneficiaries' consent—use that information to file fraudulent claims.

The defendant's objection is two-fold. First, he points to the definition of "mass-marketing," which

> means a plan, program, promotion, or campaign that is conducted through solicitation by telephone, mail, the Internet, or other means to induce a large number of persons to (i) purchase goods or services; (ii) participate in a contest or sweepstakes; or (iii) invest for financial profit. "Mass-marketing" includes, for example, a telemarketing campaign that solicits a large number of individuals to purchase fraudulent life insurance policies.

§ 2B1.1 application n.4(A). He claims that the facts of this case, which he characterizes as "posting of flyers on an old-fashioned cork board announcing a pizza party with a pitch," don't meet that definition. But the facts as set forth in the presentence report go somewhat beyond the defendant's characterization. *See* filing 60 at 2. The Court also notes that

comparable conduct has been held to support imposing the mass-marketing enhancement. *See United States v. Moran*, 778 F.3d 942, 976-77 (11th Cir. 2015); *United States v. Mauskar*, 557 F.3d 219, 233 (5th Cir. 2009); *cf. United States v. Kieffer*, 621 F.3d 825, 834-35 (8th Cir. 2010). The Court's tentative finding is that the defendant's scheme involved "solicitation . . . to induce a large number of persons to . . . purchase goods or services," and thus that the defendant's marketing was sufficiently "mass" to support the mass-marketing enhancement.

**(b)(ii)** The defendant's other argument regarding the mass-marketing enhancement is that it should not apply because the people to whom the scheme was marketed were not the victims of the offense, which were the government programs that were defrauded. Filing 60 at 2-3. The defendant relies on *United States v. Miller*, in which the Eighth Circuit upheld the trial court's refusal to apply the mass-marketing enhancement where the defendant had mass-marketed individual residential loans, but defrauded other lending institutions into purchasing those loans by mispresenting their risk. 588 F.3d 560, 561-62, 568 (8th Cir. 2009).

But that reads too much into *Miller*. In *Miller*, the issue was whether "the offense *itself* [involved] mass-marketing," and the Court of Appeals held it didn't because the defendant had "participated in a mortgage fraud conspiracy involving fraud on financial institutions, not consumers." *Id.* at 568 (emphasis supplied). There is no indication in the Eighth Circuit's opinion that the initial loans had been made with the intent to later dispose of them fraudulently. *See id.* at 562-63. Here, however, it is apparent that the defendant solicited business with the

intent—perhaps the *sole* intent—of obtaining information needed to defraud the government. The mass marketing was part and parcel—and relevant conduct—of the scheme to defraud.[1] *See* United States v. Isiwele, 635 F.3d 196, 204-05 (5th Cir. 2011).

**(b)(i)** Next, the defendant objects to another two-level increase pursuant to § 2B1.1(b)(10)(A) and (C), because the defendant allegedly "relocated" his fraudulent scheme to Iowa to evade regulatory officials and because the offense involved sophisticated means. On the first point, the defendant argues that the evidence is insufficient to show he relocated his scheme to Iowa after his participation in Nebraska Medicaid was terminated due to his failure to provide documentation. Filing 60 at 3. Rather, the defendant suggests he had been submitting claims in both Iowa and Nebraska, and simply continued submitting claims in Iowa after his Nebraska participation was terminated—which, he says, isn't the sort of "relocating" that § 2B1.1(b)(10)(A) contemplates. The

---

[1] The Court is aware that other courts have relied on *Miller* to support the proposition that "a scheme is committed through mass-marketing only when the mass marketing is directed toward individuals who will be harmed by the scheme." *United States v. Lacey*, 699 F.3d 710, 714-15 (2d Cir. 2012). As explained above, the Court sees that as an extension of *Miller*, not an application. That said, even if the mass-marketing enhancement requires the targets of the marketing to be harmed by the offense, the record here suggests they were: their personal information was used without their consent, items were not provided to them, or the items provided to them were different and less valuable than those the government was billed for. While the government bore the brunt of the financial loss, the beneficiaries who were ultimately not provided with the goods and services for which Medicare and Medicaid paid were also harmed by the scheme. *See Isiwele*, 635 F.3d at 204-05; *cf. Lacey*, 699 F.3d at 716.

government, on the other hand, argues that claims in Iowa increased following Nebraska termination. Filing 57 at 11.

The Eighth Circuit has explained that the plain language of § 2B1.1(b)(10)(A) requires the Court "to find: (1) the defendant relocated from one jurisdiction to another; (2) the fraudulent scheme moved with the defendant; and (3) that the defendant intended to evade law enforcement or regulatory officials." *United States v. Vega-Iturrino*, 565 F.3d 430, 433 (2009) (quoting *United States v. Smith,* 367 F.3d 737, 740 (8th Cir. 2004)). Even assuming, as the government argues, that claims in Iowa increased after participation in Nebraska's program was terminated, there is little to suggest that the purpose was to evade detection, as opposed to simply maintaining the scheme. Nor is it even clear that the scheme was "relocated," given its preexisting presence in Iowa. Section 2B1.1(b)(10)(A) does not apply "to every fraudulent scheme that just happens to operate in multiple jurisdictions." *United States v. Hines-Flagg,* 789 F.3d 751, 755 (7th Cir. 2015). Nonetheless, the government may present evidence to prove a factual basis for this enhancement, should it choose to do so.

**(b)(ii)** But the presentence report alternatively bases the same two-level increase on § 2B1.1(b)(10)(C), for an offense that "otherwise involved sophisticated means" that the defendant intentionally engaged in or caused the conduct constituting. For purposes of that subsection,

> "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme

>     in one jurisdiction but locating soliciting operations in
>     another jurisdiction ordinarily indicates sophisticated
>     means. Conduct such as hiding assets or transactions, or
>     both, through the use of fictitious entities, corporate shells,
>     or offshore financial accounts also ordinarily indicates
>     sophisticated means.

*Id.*, cmt. n.9(B). But "'sophisticated means' need not be *highly* sophisticated." *United States v. Norwood*, 774 F.3d 476, 480 (8th Cir. 2014) (emphasis supplied). The sophisticated-means enhancement is proper when the offense conduct, viewed as a whole, was notably more intricate than that of the garden-variety offense. *Id*. Relevant factors include the length of the scheme, the use of forged or false documents, and the use of Ponzi-type payments. *United States v. Meadows*, 866 F.3d 913, 917-18 (8th Cir. 2017). And repetitive, coordinated conduct can be subject to the enhancement even if no single step is complicated. *United States v. Patino*, 912 F.3d 473, 477 (8th Cir. 2019).

The defendant argues that there was nothing sophisticated about his scheme, which he describes simply as "billing for goods he did not provide." Filing 60 at 4. The government, however, describes the defendant's conduct as a nearly-10-year scheme including the use of another person's name on filings, obtaining and using stolen identity information and forged or duplicated medical authorizations, using a third-party biller, and using gifts and kickbacks to collect additional beneficiaries. *See* filing 57 at 12. That conduct—and, again, the defendant does not seem to deny these facts—is similar to conduct that has been held to support a finding of "sophisticated means," based on the

length of the scheme, the number of false claims, and the use of false documents. *E.g. United States v. Mitchell*, 914 F.3d 581, 586-87 (8th Cir. 2019); *United States v. Adejumo*, 772 F.3d 513, 531-32 (8th Cir. 2014); *United States v. Waters*, 799 F.3d 964, 974 (8th Cir. 2015); *United States v. Finck*, 407 F.3d 908, 915 (8th Cir. 2005).

The defendant argues that while his scheme may have involved repetition, "there was no coordination" because he "just continued to keep with the same fraudulent scheme of filing false claim after false claim until he was caught." Filing 60 at 4. That understates the number of steps that were involved in filing those claims, from the various means used to collect beneficiary information, to the preparation of the claims, to the provision of items to purported claimants. He repeated some variation of that process at least 3,649 times. The Court's tentative finding, therefore, is that the scheme involved sophisticated means.

**(c)** Next, the defendant objects to the assessment of a four-level enhancement to the offense conduct for being "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," within the meaning of U.S.S.G. § 3B1.1(a). To qualify for this enhancement, the defendant must have been the organizer or leader of at least one other person who was criminally responsible for committing the offense, *id.*, cmt. n.2, although all persons involved during the course of the offense (even if they were unknowing) are considered when assessing whether the organization was "otherwise extensive," *id.*, cmt. n.3. Both the presentence report and the government's argument, filing 57 at 10, premise the applicability of this enhancement on the criminal activity being "otherwise extensive."

The defendant, as the Court understands his argument, doesn't appear to be contending that the overall scheme wasn't extensive. *See* filing 60 at 6. Rather, he relies on the fact that regardless of whether the scheme was extensive, the government must *also* prove that at least one other "participant" in the offense—that is, "a person who is criminally responsible for the commission of the offense, but need not have been convicted"—was organized or led by the defendant. *See* § 3B1.1, cmt. n.2; *see also United States v. Musa*, 830 F.3d 786, 788 (8th Cir. 2016). The defendant argues that there is no evidence "supporting the government's position that anyone admitted to knowing that [the defendant] was filing false claims and knowingly assisted in that endeavor." Filing 60 at 6.

A person doesn't need to be guilty as a principal in the charged offense, or even benefit from commission of the offense, in order to be "criminally responsible" for it—instead, he or she only needs to give "knowing aid in some part of the criminal enterprise." *United States v. Starks*, 815 F.3d 438, 441 (8th Cir. 2016). Of course, the government could prove that there was another participant in the offense without anyone "admitt[ing]" to it—such a finding can be based on circumstantial evidence. *See id.* at 442-43. It must, however, *be based on something*. *See Mitchell*, 825 F.3d at 425 (when defendant objects, government must prove factual basis for enhancements by a preponderance of the evidence). Accordingly, the Court will resolve the applicability of this enhancement based on the evidence at sentencing.

**(d)** Finally, the defendant moves for a downward departure pursuant to U.S.S.G. § 4A1.3(b), arguing that his three DUI convictions between 2002 to 2006 lead to a criminal history score—Category III—that over-

- 9 -

represents the seriousness of his crimes. Filing 60 at 6-7. The government argues that the defendant's alcohol-related criminal behavior did not end in 2006, and that his alcohol use and gambling habits were contributing factors to his criminal conduct. Filing 63 at 3.

"A downward departure from the defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." § 4A1.3 cmt. n.3. But the defendant bears the burden of proving the appropriateness of a downward departure. *United States v. Cantu,* 12 F.3d 1506, 1511 (9th Cir. 1993). Accordingly, the Court—recognizing its authority to depart downward, *see United States v. Simms,* 695 F.3d 863, 866 (8th Cir. 2012)—will resolve this motion at sentencing.

3. Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraph, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

4. If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is

requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.[2]

5. Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6. Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 26th day of February, 2020.

BY THE COURT:

John M. Gerrard
Chief United States District Judge

---

[2] The Court notes that the government has already requested a hearing of one hour, filing 57 at 16, and that the defendant anticipates 30 minutes of his own testimony, filing 59 at 2.